IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MALIK J. WILLIAMS, | ) CASE NO. 1:10CV2583 |
| Plaintiff, | ) JUDGE GWIN |
| | ) MAGISTRATE JUDGE BURKE |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

Plaintiff Malik J. Williams ("Williams") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Doc. 1. The Commissioner determined that Williams was not disabled within the meaning of the Social Security Act because he was capable of performing jobs that exist in significant numbers in the national economy when his Residual Functional Capacity ("RFC")[1] and vocational factors are taken into account. Tr. 19-20.

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the final decision of the Commissioner should be AFFIRMED.

**I. Procedural History**

Williams filed an application for SSI on August 22, 2006, alleging a disability onset date of December 4, 2004. Tr. 48, 65-67. His application was denied initially on November 7, 2006,

---

[1] Residual Functional Capacity is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App'x. 2, § 200(c).

and again upon reconsideration on March 28, 2007.  Tr. 12.  On April 11, 2007, Williams requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on April 16, 2009.  Williams appeared with counsel and testified at the hearing.  Tr. 21-41.  A vocational expert also testified.  Tr. 41-46.  The ALJ denied Williams' application on May 7, 2009.  Tr. 12-20.  In a notice dated October 7, 2010, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-4.

On November 12, 2010, Williams filed this action seeking review of the Commissioner's decision.  Doc. 1.  On March 8, 2011, Williams filed his Brief on the Merits in which he asserted one ground for review:

> Whether the Commissioner's decision finding that Mr. Williams is capable of performing a significant number of jobs is supported by substantial evidence when the Residual Functional Capacity finding is not an accurate assessment of Mr. Williams' specific limitations.

Doc. 11.  On May 3, 2011, the Commissioner filed his Brief on the Merits.  Doc. 13.

## II.  Evidence

### A.  Personal and Vocational Evidence

Williams was thirty-one (31) years old at the time of the administrative hearing.  Tr. 23.  He attended school through the ninth grade in special education classes.  Tr. 25.  Williams testified that he was unable to pass the test for a GED.  *Id.*  Williams' entire work experience consisted of working for a catering company for one week (Tr. 26) and working in a factory for two days.  Tr. 42.

### B.  Medical Evidence

#### 1.  Mental Impairments

Williams has not sought any specialized psychological counseling or treatment for the mental impairments that he relies on to establish that he is disabled.  Tr. 18.  Accordingly, there

was no treating physician evidence for the ALJ to consider with respect to Williams' mental impairments.

On April 4, 2006, Sally Felker, Ph.D., a psychologist, performed a consultative examination of Williams. Tr. 125-28. Dr. Felker found that Williams was cooperative, despite restricted motivation. Tr. 126. She noted that Williams' speech was normal, organized, relevant, and goal directed. *Id.* Williams reported that he had been depressed, but denied crying spells, anxiety, suicidal thoughts, or hallucinations. Tr. 126. Dr. Felker also noted that Williams visited his children in the afternoons, visited his mother, sometimes ate at a restaurant, visited friends, and visited his girlfriend. Tr. 127. Williams also enjoyed playing cards with friends, played video games, and liked to cook. *Id.* Intelligence testing revealed a full-scale IQ score of 72, verbal IQ of 73, and performance IQ of 75. *Id.*

Dr. Felker diagnosed Williams with polysubstance dependence in remission, borderline intellectual functioning, and anti-social personality disorder. Tr. 128. She assigned Williams a Global Assessment of Functioning ("GAF") score of 56.[2] Tr. 128. Further, Dr. Felker found Williams had moderate impairment in his ability to concentrate and attend to tasks, understand and follow instructions to carry out routine tasks, relate to others, deal with the general public, relate to work peers and supervisors, and tolerate the stressors of employment. Tr. 128.

On October 28, 2006, Karla Voyten, Ph.D., a state agency psychologist, reviewed Williams' record and completed a Psychiatric Review Technique Form noting findings in Listings 12.05 (Mental Retardation), 12.08 (Personality Disorders) and 12.09 (Substance Addiction Disorders). Tr. 140. Dr. Voyten found that these impairments imposed mild

---

[2] GAF measures a clinician's judgment of the individual's overall level of psychological, social, and occupational functioning. Diagnostic & Statistical Manual of Mental Disorders-Text Revision 32 (4th ed. 2000) ("DSM-IV-TR"). A GAF score of 51 to 60 is indicative of an individual who has moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV-TR, APP. B.

restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, attention and pace; and, no episodes of decompensation. Tr. 150. Dr. Voyten also completed a Mental Residual Functional Capacity assessment. Tr. 136-138. She opined that Williams was capable of performing simple, repetitive tasks in environments where duties are relatively static, where there are no time or production pressures, where changes can be easily explained, and where social interaction is superficial. Tr. 138. On September 19, 2007, Catherine Flynn, Psy.D., a state agency psychologist, reviewed the file and affirmed Dr. Voyten's assessment. Tr. 155.

### 2. Physical Impairments[3]

Williams was treated at MetroHealth Medical Center in December 2004 for multiple gunshot wounds. Tr. 113-124. An x-ray on December 14, 2004, revealed two bullets overlying the left upper chest and shoulder and a third bullet overlying the lower left chest. Tr. 115. A rib fracture was noted adjacent to the lower bullet fragment and there was also a left pleural effusion. *Id.* On December 20, 2004, it was noted that Williams had sustained seven gunshot wounds which caused a gastric injury, a transverse colon injury, and left lobe of the liver injury. Tr. 116. He was seen for follow-up after repair of the gastric and colonic injuries. *Id.* An exam at that time noted palpable bullet wounds in the left shoulder and left back. *Id.* It was noted that the bullet wounds in the neck, back and abdomen were healing well. *Id.*

On July 28, 2006, Williams was seen at the emergency department of MetroHealth Medical Center complaining of an eight-month history of unresolved and worsening left lateral thoracic back pain. Tr. 122. An examination revealed gunshot wound scars in the lower mid abdomen, left anterior chest, left lateral chest and a mobile non-tender mass beneath the skin in the left posterior lateral thoracic chest. *Id.*

---

[3] Williams' Brief does not contain any argument based on the evidence concerning physical impairments.

On April 4, 2006, Williams underwent a physical evaluation performed by Franklin D. Krause, M.D. Tr. 130-135. Dr. Krause's examination noted multiple scars from gunshot wounds. Tr. 130-131. Dr. Krause opined that Williams did not have any significant residuals from his gunshot wounds. Tr. 131.

**C.     Administrative Hearing**

    **1.     Williams' Testimony**

On April 16, 2009, Williams appeared with counsel and testified at a hearing before the ALJ. Tr. 21-41. Williams testified that he experiences mild pain every day as a result of the injuries he sustained from the gunshot wounds. Tr. 28, 30. He also experiences back pain with activity and pain if he is on his feet too long. Tr. 31. Williams estimated that he could stand about 20 minutes at a time and walk 20-30 minutes at a time. *Id.* He could sit 20-30 minutes before feeling pain. Tr. 32.

Williams also testified that he was depressed "some of the time," but did not take any medication for his depression. Tr. 33-34. He cries about one time a week. Tr. 34. He does not get along with others and tries to avoid people. *Id.* Williams further testified that he has difficulty concentrating. Tr. 35. About twice a day, he will have difficulty remaining focused. Tr. 41. Williams stated that he has difficulty with stress such as working. Tr. 40. When asked about other activities, Williams testified that he watches television, reads magazines and the newspaper, and sometimes cooks and does the laundry. Tr. 35-36, 37. He also attends church, visits his three children, and watches his five-year-old son. Tr. 37-38.

    **2.     Vocational Expert's Testimony**

Bruce Holderead, a vocational expert ("VE"), testified at Williams' hearing. Tr. 41-46. The VE testified that Williams had not performed work at the substantial gainful activity level.

5

Tr. 43.  The ALJ asked the VE a series of hypothetical questions regarding whether jobs existed for individuals with certain impairments.  *Id.*  One of the hypotheticals incorporated the same elements as the RFC finding ultimately made by the ALJ: the ALJ asked the VE to consider an individual with the same vocational characteristics as Mr. Williams with no significant exertional limitations, with work limited to simple, repetitive, low stress work.  Tr. 43.  The VE testified that the individual would be able to perform the requirements of the following representative occupations: cleaner, industrial (1,000,000 jobs in the nation, 50,000 in Ohio, and 15,000 in the region of Northeast Ohio); kitchen helper (250,000 jobs in the nation, 10,000 in Ohio, and 3,000 in the region); and automobile detailer (220,000 jobs in the nation, 9,000 in Ohio, and 2,500 in the region).  Tr. 44.

In the next hypothetical, the ALJ asked the VE to consider the same hypothetical as before, but add the limitations of superficial contact with the public and limited interaction with coworkers.  Tr. 44-45.  The VE stated that the additional limitations did not change his opinion that the individual could perform jobs in the three representative occupations or eliminate or reduce the number of jobs available in those occupations.  Tr. 45.  Finally, the ALJ asked the VE to add to the ALJ's hypothetical a limitation of low production quotas.  Tr. 46.  The VE responded that this additional limitation also did not change his opinion as to the individual's ability to perform jobs in the three representative occupations, or eliminate or change the number of jobs available in those occupations.  Tr. 46.

Williams' counsel was then given an opportunity to question the VE.  Tr. 45-46.  Counsel asked the VE to add the additional limitation to the ALJ's third hypothetical question that the individual could not work at jobs that have time or production pressures.  *Id.*  The VE responded that the additional limitation would not change the number of jobs he had identified in the prior

6

hypothetical because the jobs are not production or quota jobs, and then noted that the individual would have to get the job done.  *Id.*  The VE then agreed that all jobs do have some time or production pressures and an individual who is unable to work in a job that had any time or production pressures would be unemployable.  Tr. 45-46.

### III.  The ALJ's Decision

The ALJ found that Williams had not engaged in substantial gainful activity since his application date.  Tr. 15.  He determined that Williams had severe impairments of borderline intellectual functioning, antisocial personality disorder, and polysubstance dependence in remission.  Tr. 14.  The ALJ found that Williams' impairments did not meet or equal an impairment listed in Appendix I of the regulations.  Tr. 15.  The ALJ then found that Williams had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: he would be limited to simple, repetitive tasks and low-stress work that does not involve high production quotas.  Tr. 16.  In reaching this conclusion, the ALJ found, based on consideration of all the evidence in the case, that Williams' testimony concerning the intensity, persistence, and limiting effects of his symptoms was not credible.  Tr. 17.  Finally, relying on the expert opinion testimony of the VE, the ALJ found Williams was capable of performing work that exists in significant numbers in the national economy and was therefore not disabled.  Tr. 19-20.

### IV.  Law

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less

7

than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Under the Social Security Act, 42 U.S.C § 423(a), eligibility for disability insurance benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Futhermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920 (b)-(g); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

## V. Analysis

The sole issue raised by William is a challenge to the ALJ's finding as to his RFC. Specifically, Williams contends that the ALJ's RFC finding is not an accurate assessment of his limitations because it "minimizes the restrictions contained in the opinions of Dr. Felker and Dr. Voyten . . . ." Doc. 11, p. 7-8. Williams reasons that, because the allegedly faulty RFC finding was incorporated in the hypothetical on which the VE based his opinion, the VE's opinion does not provide substantial evidence to support the Commissioner's determination that he is not disabled.

A.   **Evidence Pertaining to the ALJ's RFC Finding**

The ALJ found that Williams had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: he was limited to simple, repetitive tasks and low-stress work that did not involve high production quotas. Tr. 16. As described below, this finding is supported by substantial evidence in the record.

The ALJ's RFC finding was based on a consideration of the entire record. Tr. 16. The record considered by the ALJ included the testimony of Williams and the information provided by his sister,[4] as well as the opinions of Drs. Felker and Voyten.

The evidence provided by Williams and his sister concerning his daily activities supports the ALJ's finding that he could perform simple, repetitive tasks and low-stress work that did not involve high production quotas. Tr. 17; *see* 20 C.F.R. § 416.929(c)(3)(i) (daily activities considered). Williams testified that he watched television, read magazines and the newspaper, cooked, and did the laundry. Tr. 17, 35-36, 37. In addition, he testified that he went to church, visited his children, and watched his five-year-old son. Tr. 17, 37-38; see also Tr. 86, 127. He also visited his mother, visited friends, and visited his girlfriend. Tr. 127. Williams enjoyed playing cards with friends, played video games, and liked to cook. Tr. 17, 127. Similarly, Williams' sister indicated that Williams could clean the house, prepare food, do laundry, shop, and sit and talk and go out to eat with friends. Tr. 17, 99-101.

The ALJ's RFC finding is also supported by Williams' lack of treatment for his mental impairments. *See* 20 C.F.R. § 416.929(c)(3)(v) (treatment considered). As noted by the ALJ, "[d]espite his mental impairments, [Williams] has not sought any specialized psychological counseling or treatment." Tr. 18.

---

[4] Williams' sister, Monique Williams, completed a questionnaire for the state agency and indicated that Williams could clean the house, prepare food, do laundry, shop, and sit and talk and go out to eat with friends. Tr. 17, 99-104.

10

The medical opinions of Dr. Voyten and Dr. Felker also support the ALJ's RFC finding. Dr. Felker found that Williams had moderate impairment in his ability to concentrate and attend to tasks, understand and follow instructions to carry out routine tasks, relate to others, deal with the general public, relate to work peers and supervisors, and tolerate the stressors of employment.  Tr. 128.  The ALJ concluded, based on Dr. Felker's opinion and the evidence that Williams was able to care his five-year-old child, that Williams had no more than moderate, as opposed to severe, limitations on mental functioning.  Tr. 18.

Dr. Voyten opined that Williams was capable of performing simple, repetitive tasks in environments where duties are relatively static, where there are no time or production pressures, where changes can be explained easily, and where social interaction is superficial.  Tr. 138  The ALJ took Dr. Voyten's opinion into account in finding that Williams' RFC included non-exertional limitations of simple, repetitive tasks and low-stress work that did not involve high production quotas.  Tr. 18.

Williams' challenge to the ALJ's RFC finding ignores both his own testimony and the evidence provided by his sister concerning his daily activities, relying instead entirely on the opinions of Drs. Felder and Voyten.  Williams argues that the ALJ erred because, while the ALJ stated that he gave great weight to both doctors' opinions, he minimized the restrictions contained in those opinions when he assessed Williams' RFC.  This argument is without merit. While the ALJ assigned great weight to the opinions of Drs. Felker and Voyten, he did not, and was not required to, give them controlling weight since neither doctor was a treating physician. See *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (noting that, under treating physician rule, the opinions of treating physicians that are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other record

11

evidence are entitled to controlling weight); 20 C.F.R. § 404.1527(d)(2). Here, the ALJ assessed the medical evidence and assigned it the weight he determined was reasonable based on all of the evidence in the record.

Williams argues that the ALJ erred in failing to adopt verbatim Dr. Voyten's opinion that he was capable of performing work only where there were no time or production pressures. Tr. 138. This argument fails because, even if Dr. Voyten's opinion is interpreted literally,[5] an ALJ is not required to adopt verbatim the opinion of a physician or psychologist. The regulations make clear that a claimant's RFC is an issue reserved to the Commissioner and the ALJ assesses a claimant's RFC "based on all of the relevant medical and other evidence" of record. 20 C.F.R. § 416.927(e)(2), *see also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a Plaintiff's RFC."); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding").

Substantial evidence in the record, including that relating to Williams' ability to perform household chores and care for his five-year-old son, supports the ALJ's determination that the highly restrictive limitation contained in Dr. Voyten's opinion was unwarranted. In light of all the evidence, the ALJ did not err in determining that a limitation from work involving high production quotas, rather than a limitation from work involving any production quotas, was appropriate. Tr. 19.

With regard to Dr. Felker, Williams argues the ALJ erred in not incorporating in the RFC Dr. Felker's opinion that he had moderate impairment in his ability to understand and follow instructions to carry out routine tasks, relate to others, and tolerate the stresses of employment.

---

[5] The ALJ concluded that Williams' counsel misinterpreted Dr. Voyten's analysis. Tr. 19.

The ALJ determined that Williams was not so limited based on his daily activities. For example, Williams read magazines and the newspaper, cooked, did the laundry, played video games, and enjoyed playing cards. Tr. 17, 35-37, 127, 99-101. Considering all the evidence, there was no error in the ALJ's determination. Moreover, the ALJ's RFC finding did take the limitations in Dr. Felker's opinion into consideration. For example, the RFC contains a limitation of simple, repetitive tasks. This limitation accommodated Dr. Felker's opinion by reducing the need for Williams to understand and follow instructions to carry out routine tasks because he would be repeating the same simple tasks rather than having to understand and carry out a variety of different tasks. The RFC also accommodated Dr. Felker's finding that Williams was moderately limited in his ability to tolerate the stressors of employment by limiting Williams to "low-stress work." Tr. 16.

In summary, there is substantial evidence in the record supporting the ALJ's RFC finding as a reasonable and accurate assessment of Williams' capabilities and limitations.

**B.     Evidence Pertaining to the ALJ's Employability Determination**

Williams acknowledges that the testimony of a vocational expert in response to a hypothetical question may provide substantial evidence to support a conclusion that a claimant is not disabled if the question accurately portrays the claimant's physical and mental impairments. Doc. 11, p. 7, *citing Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). *See also Howard v. Comm'r of Soc. Sec*, 276 F.3d 235, 238 (6th Cir. 2002).

Williams' only quarrel with the Commissioner's determination that he is able to perform jobs that exist in significant numbers in the national economy is his contention that the hypothetical posed to the VE incorporated an erroneous RFC finding. As shown above, however, the RFC finding is supported by substantial evidence of record. Accordingly, the

hypothetical accurately portrayed Williams' impairments and the VE's opinion in response to the hypothetical provides substantial evidence supporting the Commissioner's determination that Williams is not disabled because he is capable of performing jobs that exist in significant numbers in the national economy. Therefore, Williams' challenge to the Commissioner's determination that he is not disabled fails.

## VI. Conclusion and Recommendation

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff Malik J. Williams' SSI benefits should be AFFIRMED.

Dated: September 22, 2011

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.