UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-----------------------------------------------------
                                                :

MALIK J. WILLIAMS,                :

                                       :       CASE NO. 1:10-cv-02583

                 Plaintiff,          :

                                                :

vs.                                           :       OPINION & ORDER
                                                :       [Resolving Doc. No. 15]

COMMISSIONER OF SOCIAL      :
SECURITY,

                                                :

                 Defendant.      :

                                                :
-----------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      Magistrate Judge Kathleen B. Burke recommended that this Court affirm the Social Security

Commissioner's denial of Supplemental Security Income benefits to Plaintiff Malik Williams.

Because the ALJ based his determination of the Plaintiff's residual function capacity ("RFC") on

substantial evidence, the Court **ADOPTS** the recommendations of the Magistrate Judge and

**AFFIRMS** the Commissioner's denial of benefits.

**I.**        **Background**

      On August 22, 2006, Williams applied for SSI benefits.  After his application was denied

both initially (November 7, 2006) and on reconsideration (March 28, 2007), Williams requested a

hearing and appeared with counsel before an Administrative Law Judge ("ALJ") on April 16, 2009.

      Williams presented medical evidence and testified at the hearing.  Williams had been shot

three times in 2004 and sought emergency-room treatment in 2006 for unresolved back pain, though

an examining physician determined that there were no significant residual impairments from the

Case No. 1:10-cv-02583
Gwin, J.

gunshot wounds.   [Doc. 10-7 at 20.]  Williams was also examined by two psychologists in 2006.

Sally Felker, Ph.D., a consultative examiner, diagnosed him with polysubstance dependance in

remission, borderline intellectual functioning, and anti-social personality disorder. [Doc. 10-7 at 17.]

Karla Voyten, Ph.D., a state agency reviewing psychologist, found that these impairments imposed

moderate mental limitations on his daily life, but that Williams' mental residual functional capacity

left him capable of performing simple, repetitive tasks "in environments where duties are relatively

static, there are no time or production pressures, changes can be easily explained and social

interaction is superficial."   [Doc. 10-7 at 27.]

The ALJ determined that Williams had the residual functional capacity "to perform a full

range of work at all exertional levels but with the following nonexertional limitations: he is limited

to simple, repetitive tasks and low-stress work that does not involve high production quotas." [Doc.

10-2 at 17.]   In determining Williams' RFC, the ALJ gave great weight to the psychologists'

opinions, but determined that Williams' own testimony concerning lingering pain from the gunshot

wounds, [Doc. 10-2 at 29-34], and psychological impairments, [Doc. 10-2 at 35-37], was not

credible. [Doc. 10-2 at 18.]   Giving great weight to the psychologists' reports and finding that

Williams suffered impairments relating to intellectual functioning, antisocial behavior, and

polysubstance dependence in remission, [Doc. 10-2 at 15], the ALJ determined that Williams'

condition did not rise to the level of an Appendix I impairment.  [Doc. 10-2 at 16.]  The ALJ

determined that Williams' RFC would permit him to do work within the nonexertional limitations

set forth above, [Doc. 10-2 at 17], that such work was available in significant numbers in the national

economy, [Doc. 10-2 at 20-21], and that Williams was not, therefore, disabled.

Williams sought review by this Court, saying that the RFC ignored more significant

Case No. 1:10-cv-02583
Gwin, J.

restrictions Williams believes are suggested by the reports of the examining psychologists.  [Doc. 11 at 7-8.]  Magistrate Judge Burke found that substantial evidence supported the ALJ's determination, [Doc. 14 at 10,] and recommended affirming the denial of benefits.

## II.    Legal Standards

To establish disability under the Social Security Act, a claimant must show that he is unable to engage in substantial activity due to the existence of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A).  Agency regulations establish a five-step sequential evaluation for use in determining whether a claimant is disabled.[1/]  The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy.  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A).

The Federal Magistrates Act requires a district court to conduct *de novo* review of the claimant's objections to a report and recommendation.  28 U.S.C. § 636(b)(1).  A final decision of the Social Security Commissioner made by an ALJ is, however, not reviewed *de novo*.  Rather, a district court is limited to determining whether the ALJ's decision is "supported by substantial

---

[1/]  During Step One, the ALJ determines whether the claimant is engaged in a "substantial gainful activity" at the time he or she seeks disability benefits.  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  In Step Two, the Plaintiff must show that he or she "suffers from a severe impairment in order to warrant a finding of disability."  *Id.* (internal quotations omitted). During Step Three of the analysis, the ALJ determines whether the claimant has an impairment that satisfies one of the criteria of an impairment listed in Appendix 1 and that also meets the durational requirement.  *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1.  A claimant is deemed disabled if she or he has an impairment that meets both the listing and the duration requirement.  For the Fourth Step, the ALJ must determine if the claimant's residual functional capacity allows him to do past relevant work.  *Colvin*, 475 F.3d at 740.  Finally, in the Fifth Step, the ALJ must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience.  *Id.*  "For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled."  *Id.*

Case No. 1:10-cv-02583
Gwin, J.

evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The substantial evidence standard requires more than a scintilla, but less than a preponderance of the evidence. *See id.* In deciding whether substantial evidence supports the ALJ's decision, a court should not try to resolve conflicts in evidence or decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). When substantial evidence supports the ALJ's decision, a court may not reverse, even if the court would have made a decision different than the ALJ made. *Siterlet v. Sec. of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).

"The Social Security Act instructs that the ALJ—not a physician—ultimately decides a Plaintiff's RFC." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).

### III. Discussion

Williams makes the same argument he made before the Magistrate Judge, saying that the ALJ minimized the restrictions contained in the reports of an examining and a reviewing psychologist–in particular, that the ALJ should have accommodated his mental limitations by limiting his capacity to roles with *no* time or production pressures. [Doc. 14 at 11.] Now he says the Magistrate Judge erred in recommending denial. [Doc. 15 at 2.] The Magistrate Judge, however, correctly determined that the ALJ's determination was supported by substantial evidence, giving great weight to the psychologists' opinions but also considering other relevant evidence to craft the RFC.

-4-

Case No. 1:10-cv-02583
Gwin, J.

The ALJ gave great weight to the opinions of both doctors, in particular to Dr. Felker, who was the only mental health professional ever to examine the plaintiff, and determined that Williams could perform a full range of work, if limited to "simple, repetitive tasks and low-stress work that does not involve high production quotas." [Doc. 10-2 at 17.]  Williams says that this inappropriately minimizes restrictions found by Dr. Voyten, the reviewing pyschologist, because he cannot work under any time or production pressure.   Indeed, Dr. Voyten found that Williams "is capable of performing [simple, repetitive tasks] in environments where duties are relatively static, there are no time or production pressures, changes can be easily explained and social interaction is superficial." [Doc. 10-7 at 27.]

But Dr. Voyten's report, much of which appears in shorthand and acronymous reference, hardly communicates a wholesale conclusion precluding work with any production responsibility. Despite the phrase "no time or production pressures," Dr. Voyten's reference to Williams' capacity for "duties that are relatively static" would make no sense if Williams was simply foreclosed from exposure to any accountability for time and effort.  The very notion of a duty–that is, at least in the employment context, a responsibility that almost inevitably incurs some measurement of time and production–would belie such a reading, as the ALJ recognized in noting that Williams' pressure limitations "do not preclude all levels of basic work-related activities." [Doc. 10-2 at 19.]

The RFC therefore neatly avoids creating a paradox in Dr. Voyten's report, accommodating Williams' mental limitations by restricting his capacity to "low-stress work" without "high production quotas." [Doc. 10-2 at 17.]  It is not necessarily true that Dr. Voyten's opinion was minimized in the least, and Williams provides neither serious argument or authority to show that this was so.

-5-

Case No. 1:10-cv-02583
Gwin, J.

Moreover, the ALJ would have been well within the scope of his authority in minimizing such an opinion, based on other medical and non-medical evidence in the record.

> The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician. Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding. Moreover, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding.

*Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (internal citations omitted). This, as to the psychologists' reports, is precisely what the ALJ did here.

In crafting the RFC, the ALJ gave great weight, not controlling weight, to the reports of the examining and reviewing psychologists, and as the Sixth Circuit recognized in *Poe*, did not simply parrot the reports of examining professionals. Undergirding the ALJ's assessment included an adverse credibility determination as Williams' asserted limitations (skepticism in which the ALJ was preceded by Dr. Voyten, who also found Williams prone to overstate his limitations, [Doc. 10-7 at 27]), medical evidence suggesting moderate impairments, [Doc. 10-7 at 17], and Williams' own testimony indicating a relatively active and capable home life and an ability to care for his children. [Doc. 10-2 at 18.]

The resulting RFC, which acknowledged Williams' mental limitations by precluding high-stress work and overly demanding production quotas, but stopped short of adopting language (*verbatim* and out of context, from the report of a single non-treating physician) that might suggest that Williams cannot function under circumstances imposing any expectations as to time or production, was based on substantial evidence. The Magistrate Judge did not err in so recommending.

Williams also mounts sidelong challenges to some of the Magistrate Judge's observations

Case No. 1:10-cv-02583
Gwin, J.

about the RFC.  He complains that the ALJ failed to explain why it did not adopt a complete ban on time or production pressures (as he alleges was the import of Dr. Voyten's report).  But the ALJ did explain, acknowledging that the Plaintiff's limitations "do not preclude all levels of basic work-related activities." [Doc. 10-2 at 19.]  The Magistrate Judge elaborated—Williams' unsupported characterization of the report and recommendation as "unreasonable" does not amount to a legal argument, and the Court will not make it for him—and now this Court has reiterated the point, above.  In any event, the RFC was based on substantial evidence and Williams' satisfaction with the fulsomeness of any particular explanation does not disturb this conclusion.

Williams also challenges the adequacy of the "simple, repetitive tasks" limitation to address his intellectual and psychosocial constraints in understanding and following instructions.  Here, and only here, Williams provides reference to (a single) authority, but *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 517 (6th Cir. 2010) provides no support.  *Ealy* cites *Ewards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005) for the proposition that for the purposes of developing vocational hypotheticals, "simple, unskilled work" did not fully capture the claimant's limited ability to concentrate, persist, and keep pace for the purposes of developing a vocational hypothetical.  Williams, however, makes no challenge to any of the ALJ's hypothetical questions in his objection to the Report and Recommendation.

Moreover, limitation to unskilled work can in some circumstances serve as a full proxy for moderate concentration or pace limitations.  *See Morris v. Comm'r of Soc. Sec.*, No. 11-10395, 2011 WL 6371094, at *8 n. 4 (E.D. Mich. Nov. 18, 2011) (reviewing cases in which the ALJ "formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.")  But  Williams makes no argument as to how the RFC (even if

-7-

Case No. 1:10-cv-02583
Gwin, J.

its limitation to "simple, repetitive tasks" adds nothing to the concept of "unskilled work," which has not been shown) is out of step with his limitations as found by the ALJ on the present record. Williams merely states that the limitation "is akin to unskilled work and does not fairly summarize Plaintiff's moderate limitations." [Doc. 15 at 2.] This conclusory statement is not a legal argument. *See Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.") Nor would such an argument prevail here. *See Latarte v. Comm'r of Soc. Sec.*, No. 08-13022, 2009 WL 1044836, at *3 (E.D. Mich. Apr. 20, 2009) (substantial evidence supported RFC limiting claimant with concentration issues "to jobs that involved simple, routine work.").

It is unnecessary, however, to determine whether some more detailed limitation, perhaps lifted *verbatim* from the brief report of a non-examining psychologist, as to Williams' concentration limitations (another effort with which Williams' brief would provide no assistance) was necessary. The ALJ gave great weight to examining psychologist Dr. Felker's opinion that Williams' ability to concentrate and attend to tasks was moderately impaired, and also great weight to Dr. Voyten's opinion that in addition to the time and pressure limitations, Williams is in fact capable of performing simple, repetitive tasks "where duties are relatively static" and "changes can be easily explained." [Doc. 10-7 at 27.] But the ALJ gave conclusive weight to neither, and nowhere surrendered his responsibility to determine appropriate limitations, on the basis of the entire record, to either psychologist. *Poe*, 342 F. App'x at 157. The ALJ considered evidence that Williams'

Case No. 1:10-cv-02583
Gwin, J.

daily activity was "not as limited as one would expect given the allegations of disabling symptoms."

[Doc. 10-2 at 18.]   In addition to testimony concerning his domestic self-sufficiency in matters of

cooking and laundry, Williams testified that he reads the newspaper and plays cards, "both of which

require some concentration."  *Pasco v. Comm'r Soc. Sec.*, 137 Fed. App'x. 828, 846 (6th Cir. 2005)

(affirming RFC where claimant with borderline intellectual functioning nonetheless engaged in daily

housekeeping, laundering, reading, and card-playing).   The ALJ had substantial evidence upon

which to constrain the RFC's limitations to simple repetitive tasks, and the ALJ correctly determined

that "nothing in the record justifies any further reduction in the residual functional capacity contained

within." [Doc. 10-2 at 19.]

## IV.  Conclusion

The Court **ADOPTS** in whole Magistrate Judge Burke's Report and Recommendation and

incorporates it fully herein by reference, and **AFFIRMS** the Commissioner's denial of benefits.

IT IS SO ORDERED.


Dated: March 26, 2012                              s/          *James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED   STATES   DISTRICT   JUDGE